UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES FITZGERALD,<br><br>        Plaintiff,<br>vs.<br><br>CITY OF LAWRENCE, and<br>LAWRENCE FIRE CHIEF BRIAN<br>MORIARTY,<br><br>        Defendants. | Civil Action No. 1:22-cv-11840-JCB |

**FIRST AMENDED COMPLAINT**

**I.**     **INTRODUCTION**

1. This case is brought by James Fitzgerald ("Fitzgerald" or "Plaintiff") against The City of Lawrence ("the City" or "Lawrence"), for various violations of Fitzgerald's rights under the Americans with Disabilities Act, M.G.L. c. 151B, §4, and violations of the common law and public policy.

**II.**     **PARTIES**

2. Plaintiff James Fitzgerald is a resident of Lawrence, Massachusetts. He formerly was an employee of the City of Lawrence.

3. The City of Lawrence is a municipality in the Commonwealth of Massachusetts.

4. Defendant Fire Chief Brian Moriarty is, upon information and belief, an adult resident of Haverhill, MA. He holds the position of Fire Chief for Defendant City of Lawrence and has held that position at all relevant times for purposes of this Complaint.

**III.     JURISDICTION AND VENUE**

5. Jurisdiction is invoked in this Court pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

**IV.     STATEMENT OF FACTS**

1. The City appointed Fitzgerald to the position of Firefighter for the Lawrence Fire Department ("the Department") on January 20, 2019. Fitzgerald remained in this position continuously through November 1, 2019.

2. During his tenure with the City, Fitzgerald took sick leave on several occasions. He also used vacation leave for reasons that would qualify for sick leave, reasons of which the City was aware.

3. In April 2019, Fitzgerald was hospitalized for approximately four or five days and was unable to work for approximately two or three weeks due to emergency surgery.

4. Section 2.140.040 of the City's Code of Ordinance requires that sick leave with pay be offered to full-time permanent employees of the City such as Fitzgerald.

5. As a Firefighter for the City, Fitzgerald was part of the bargaining unit represented by Local 146 of the International Association of Fire Fighters. Article XIV of the parties' collective-bargaining agreement in effect at relevant times provided employees with paid sick days, some of which could be used to care for ill family members.

6. The City did not investigate, discipline, or even verbally counsel Fitzgerald for taking leave as described above in Paragraph 2.

7. Prior to November 1, 2019, the City never disciplined Fitzgerald or verbally counseled him for any issues related to attendance.

8. Starting in or about late September 2019, Fitzgerald began attending the Massachusetts Fire Academy ("the Academy") in his capacity as a Firefighter for the City.

9. On or about October 1, 2019, the Academy completed an injury report after Fitzgerald experienced cramping during a training exercise.

10. On or about October 7, 2019, an Academy instructor filed an injury report about Fitzgerald experiencing swelling in his left hand and wrist.

11. The Employer received a copy of the injury reports described above in Paragraphs 9 & 10 before November 1, 2019.

12. On or about October 13, 2019, Fitzgerald and his pregnant girlfriend were victims of a vicious dog attack. As a result of the attack, both Fitzgerald and his girlfriend were admitted to a local hospital.

13. Fitzgerald sustained puncture wounds to his right forearm and experienced pain and swelling in his right hand and wrist. Fitzgerald's girlfriend was hospitalized in the high-risk maternity ward and required multiple surgeries.

14. Fitzgerald could not attend the Academy as a result of the hospitalization described above in Paragraph 12.

15. On or about October 14, Fitzgerald's mother, Colleen Fitzgerald, contacted the Fire Department and spoke with Captain Martin. She advised that Fitzgerald was in the hospital and could not attend the Academy.

16. During the call described in Paragraph 15, Captain Martin disclosed that other Firefighters in the Department have been unable to complete the Academy, that those firefighters were re-enrolled in the next class, that Fitzgerald should not worry and it would be fine.

17. On or about October 15, 2019, Recruit Programs Coordinator Dennis A. Ball of the Academy emailed Defendant Moriarty to inform Moriarty that Fitzgerald could not complete the Academy because he had been absent that day, which was a mandatory attendance day due to an exam being administered.

18. Ball wrote that the Department could withdraw Fitzgerald without prejudice from the current Academy class "due to a medical" and then re-enroll him in the next Academy class, where he could resume at Training Day 16, the day at which his training ended due to his injuries.

19. Fitzgerald remained on leave from October 14 through October 24 as a result of the injuries he had suffered due to the dog attack.

20. On October 18, 2019, Fitzgerald spoke to Defendant Moriarty directly. During the call, Fitzgerald described the dog attack as well as his and his girlfriend's injuries. Defendant Moriarty asserted that he "heard" Fitzgerald broke his hand, and that Fitzgerald had "washed out" of the Academy. Defendant Moriarty repeatedly and angrily asserted that Fitzgerald previously had taken sick leave and vowed that Fitzgerald would not be paid during his absence. Fitzgerald explained that his hand was not broken, and he had an appointment with a hand surgeon scheduled for October 23. Defendant Moriarty told Fitzgerald to contact him after the appointment with the hand surgeon.

21. On October 23, Fitzgerald was evaluated by a hand surgeon who cleared Fitzgerald to return to work for his next scheduled shift on or about October 28.

22. After the appointment, Fitzgerald attempted to reach Defendant Moriarty by phone as Moriarty had requested, initially without success.

23. Fitzgerald finally reached Defendant Moriarty by phone on or about October 24, during which conversation Defendant Moriarty said that he was unsure what would happen because this was the second time that Fitzgerald had taken sick leave.

24. On or about October 25, Fitzgerald brought to Defendant Moriarty a note from the hand surgeon clearing him to return to work and photos of the dog-bite injuries.

25. On or about October 25, Defendant Moriarty sent a letter to City of Lawrence Personnel Director Frank Bonet requesting approval to terminate Fitzgerald's employment.

26. In the letter described in Paragraph 25, Defendant Moriarty cited the fact that Fitzgerald had "used much of his sick leave for the year" before entering the Academy.

27. Later in the letter, Defendant Moriarty wrote, "He also had to be put out on sick leave and use his last vacation time due to another medical issue.  He is currently out without leave or sick time being docked pay.  He has washed out of the academy due to this medical [sic]."

28. The letter also purports to rely on alleged performance deficiencies by Fitzgerald at the Academy.

29. The alleged performance deficiencies would not have prevented Fitzgerald from graduating from the Academy.

30. Other Firefighters who attended the Academy contemporaneously with Fitzgerald had greater deficiency points and lower test scores but graduated from the Academy and were not terminated by the City.

31. On or about November 1, 2019, the City terminated the employment of Fitzgerald.

32. The termination letter dated November 1 states that Fitzgerald was terminated for "judgment, conduct, and performance."

33. On or about December 9, 2019, at a pre-hearing conference at the Civil Service Commission, the City asserted a different reason for terminating Fitzgerald's employment, representing that it had terminated Fitzgerald for a "no-call, no-show."

34. Fitzgerald filed a claim for unemployment benefits with the Massachusetts Department of Unemployment Assistance (DUA) after his termination.

35. The City again asserted a different reason for terminating Fitzgerald in its representations to the DUA, claiming that he was terminated for "absenteeism/tardiness."

36. On May 1, 2020, Fitzgerald filed a claim with the Massachusetts Commission Against Discrimination.

37. On January 27, 2023, the Massachusetts Commission Against Discrimination dismissed the claim filed before it to provide Fitzgerald the right to sue.

## COUNT I
### Disability Discrimination
### 42 U.S.C. § 12112

38. Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in Paragraphs 1 through 37.

39. The termination of Fitzgerald's employment constituted discrimination against a qualified individual on the basis of disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12112.

## COUNT II
### Disability Discrimination
### M.G.L. c. 151B, §4(16)

40.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in Paragraphs 1 through 39.

41.     The termination of Fitzgerald's employment constituted discrimination against a "qualified handicapped person" on the basis of disability in violation of Section 4(16) of Chapter 151B of the Massachusetts General Laws.

## COUNT III
### Wrongful discharge in violation of public policy

42.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in Paragraphs 1 through 41.

43.     The City and Defendant Moriarty, acting in his official capacity, wrongfully terminated Fitzgerald in violation of public policy because Fitzgerald was terminated for availing himself of the right to use sick leave as conferred by law and City policy.

## JURY DEMAND

Plaintiff demands a trial by jury on all his claims.

WHEREFORE, Plaintiff requests this Honorable Court to enter judgment against Defendants and to award Plaintiff reinstatement to his former position and other equitable relief; damages in the form of emotional distress, punitive damages and reasonable attorney's fees and costs, all as provided by law, and for such other and further relief as his Court deems just and proper.

Respectfully submitted,

JAMES FITZGERALD,

By his attorneys,

/s/James Hykel
James Hykel, BBO #666861
G. Alexander Robertson, BBO #707654
Pyle Rome Ehrenberg PC
2 Liberty Square, 10th Floor
Boston, MA 02109
(617) 367-7200

Dated:  February 1, 2023

CERTIFICATE OF SERVICE

    The undersigned hereby certifies that, on February 1, 2023, the above document was filed through the Electronic Case Filing System for filing and thus accomplished electronic service to the registered participants as identified on the Notice of Electronic Filing.

/s/James Hykel
James Hykel